## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **1515 SOUTH HOLDINGS, LLC,** Plaintiff, **v.** | **CIVIL ACTION NO. _____** |
| **STEWART TITLE GUARANTY COMPANY,** and **CAPITAL TITLE OF TEXAS LLC** Defendants. | **JURY TRIAL DEMANDED** |

## PLAINTIFF 1515 SOUTH HOLDINGS, LLC'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff 1515 South Holdings, LLC ("1515" or "Plaintiff") files this Original Complaint and Jury Demand against Defendant Stewart Title Guaranty Company ("STGC") and Capital Title of Texas LLC ("CTOT" or "Defendants") and alleges as follows:

### I.    NATURE OF ACTION

1. This is an action for declaratory relief, negligence (against CTOT) and damages arising from STGC's denial of 1515's tender of defense and demand for coverage under an Owner's Policy of Title Insurance (Texas T-1) issued in connection with 1515's purchase of residential real property located in Harris County, Texas.

2. 1515 seeks (i) a declaration that STGC owes a defense and coverage for claims adverse to 1515's title; (ii) recovery of defense costs and other policy benefits; and (iii) statutory and extra-contractual damages resulting from CTOT's negligent failure to report the homestead affidavit as detailed below and STGC's unfair claim-handling and bad-faith denial.

## II.    PARTIES

3. Plaintiff 1515 South Holdings, LLC is a limited liability company organized under the laws of the State of Delaware. All of 1515's members are citizens of the State of Washington and are not citizens of Texas. 1515's principal place of business is in Seattle, Washington.

4. Defendant Stewart Title Guaranty Company is an insurance company that underwrites title insurance policies, including the Policy at issue. Upon information and belief, STGC is a "domestic company" and pursuant to Section §804.101(b)(2) of the Texas Insurance Code, may be served with process by leaving a copy of the process at its principal business office, 1360 Post Oak Blvd, Suite 100, Houston, Texas 77056 during regular business hours.

4.1  Defendant Capital Title of Texas LLC is a Texas limited liability company and may be served with process by serving its registered agent, Victoria S. Feather at 2400 Dallas Parkway, Suite 560, Plano, Texas 75093. Upon information and belief, none of CTOT's members are residents of the State of Washington.

### III.    JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391 because the Property is located in Harris County, Texas; the Title Commitment and Policy were issued in this District; and STGC's claim-handling and denial occurred in and was directed to this District.

7. All conditions precedent to 1515's claims for relief have occurred, have been performed, or have been waived.

### IV.    FACTUAL BACKGROUND

8. On or about May 18, 2023, 1515 acquired title to the real property commonly known as 1515 South Boulevard, Houston, Harris County, Texas (the "Property").

9. In connection with the purchase, 1515 obtained an Owner's Policy of Title Insurance, Texas Form T-1 (Policy No. O-5966-000294417; STGC File No. S023-0350892-25) (the "Policy"). CTOT issued the title commitment(s) and issued and/or facilitated issuance of Plaintiff's owner's title policy from STGC in connection with the closing.

10. As part of the transaction, the seller, Scott V. Van Dyke ("Van Dyke"), executed a non-homestead affidavit in or around February 2023 in which he disclaimed homestead rights in the Property.

11. After closing, 1515 discovered that Van Dyke had recorded a homestead affidavit (the "Homestead Affidavit") that contradicted or purported to withdraw the non-homestead affidavit. Upon information and belief, the Homestead Affidavit was recorded on or about March 27, 2023—before the Title Commitment and Policy Date—as STGC later acknowledged. The Homestead Affidavit was in the public records but was not disclosed in CTOT's title commitment or excepted from coverage in the Policy.

12. A dispute later arose between 1515 and Van Dyke concerning the Property and related agreements, and litigation is pending in the United States District Court for the Southern District of Texas, Houston Division, styled 1515 South Holdings, LLC v. Scott Van Dyke, Case No. 4:24-cv-05038 (the "Underlying Action"). On February 24, 2026, Van Dyke filed his Defendant's First Amended Answer and Counterclaim. In that live pleading, Van Dyke alleges, among other things, that (i) he recorded a "Homestead Designation Affidavit" on March 27, 2023 purporting to rescind "*ab initio*" any prior non-homestead renunciation and designating the Property as his homestead; (ii) the Property was his homestead at the time of the May 2023 conveyance; (iii) the sales price was less than the appraised fair market

value; and (iv) the leaseback rent exceeded the fair rental value—facts Van Dyke pleads to support a statutory homestead-sale claim under Texas Property Code § 41.006. **(See First Amended Answer and Counterclaim ¶¶ 7, 9–12.)**

13. Van Dyke's Counterclaim is an express adverse claim to—and direct attack on—1515's title. Van Dyke pleads that Texas Property Code § 41.006(b) provides that the taking of a deed in such a transaction is a deceptive trade practice and that "the deed is void and no lien attaches to the homestead property as a result of the purported sale." Van Dyke then seeks a declaration from the Court that the May 16, 2023 deed conveying the Property to 1515 is "void *ab initio*," that no lien attaches to the Property as a result of any action of 1515, and that "title to the Property is solely vested in Mr. Van Dyke, free from all claims, liens, or encumbrances asserted by 1515." Van Dyke also seeks actual and statutory damages, treble damages under the DTPA, attorney's fees, and other relief. If granted, this requested relief would divest 1515 of its ownership interest and render 1515's title unmarketable. **(See id. ¶¶ 27–31.)**

## V.   THE POLICY AND POTENTIAL COVERAGE

13.1 In performing title and closing services for Plaintiff, CTOT undertook to exercise reasonable care consistent with the standards of a prudent title company and escrow/closing agent in Texas, including (without limitation): (a) examining and reporting the status of title based on the public real property records, (b) conducting

a bring-down/update of title through the date of closing/policy issuance, (c) disclosing to the parties recorded instruments reasonably necessary to evaluate title risk and marketability, (d) accurately preparing the title commitment/policy schedule of exceptions (or ensuring that recorded instruments affecting title risk were appropriately addressed), and (e) conducting the closing/escrow in a manner that does not unreasonably expose the insured/buyer to foreseeable title-impairing claims.

14. The Policy is a contract of insurance. Subject to its terms, conditions, exclusions, and exceptions, the Policy insures 1515 against loss or damage sustained or incurred by reason of defects, liens, encumbrances, or other matters affecting title, and obligates STGC to provide a defense against litigation in which a third party asserts an adverse claim covered by the Policy.

15. Because the live Counterclaim seeks a judgment declaring 1515's deed void and title solely vested in Van Dyke, it squarely alleges matters that at least potentially fall within the Policy's covered risks (including risks that title is vested other than as stated and/or that title is unmarketable) and therefore trigger STGC's defense obligation.

16. The Homestead Affidavit and the homestead-based statutory title attack are alleged to have existed, and been recorded, before the Policy Date and were not excepted from coverage. At minimum, STGC owed 1515 a defense to the

Counterclaim's title-voiding request for relief and the related adverse-title allegations.

## VI.    TENDER, CLAIM HANDLING, AND DENIAL

17. On April 25, 2025 (and/or May 1, 2025), 1515 provided STGC written notice of claim and tendered defense, explaining that the Homestead Affidavit had been missed in the title search and that Van Dyke's homestead-based claims created an adverse claim and cloud on title. 1515 later supplemented its tender and requested reconsideration of STGC's denial on or about January 27, 2026.

18. 1515 requested that STGC immediately appoint counsel to defend 1515 and indemnify 1515 for losses and liabilities arising from the adverse claim.

19. On June 5, 2025, STGC issued a denial letter rejecting 1515's tender of defense. STGC asserted that the dispute concerned unrecorded contractual rights (including a lease and option) and relied on certain Schedule B exceptions and policy exclusions to deny a defense and coverage. After Van Dyke filed the live First Amended Answer and Counterclaim expressly seeking to void 1515's deed and vest title solely in Van Dyke, 1515 requested reconsideration and provided updated pleadings. STGC nevertheless reiterated and reaffirmed its denial on February 26, 2026—contending, among other things, that the Homestead Affidavit "does not impact the title," that STGC has no obligation to disclose all recorded instruments in the Policy, and that the allegations asserted against 1515 do not trigger any

Covered Risks. STGC also asserted that, as underwriter, it did not conduct the title search or participate in the closing transaction, in essence trying to shift the blame to CTOT. **(See First Amended Answer and Counterclaim ¶ 31; STGC Feb. 26, 2026 denial letter.)**

20. In denying the claim—and later reaffirming its denial even after being presented with the live Counterclaim expressly seeking a declaration that 1515's deed is void and that title is vested solely in Van Dyke—STGC failed to conduct a reasonable investigation focused on the title-voiding relief being sought, mischaracterized the nature of the adverse claim as merely contractual/possession-based, and failed to provide a reasonable explanation of the denial in relation to the facts and applicable law.

21. As a result of STGC's denial, 1515 has been forced to retain counsel at its own expense and has incurred and continues to incur substantial attorney's fees, costs, and other damages.

## VII.   CAUSES OF ACTION

## COUNT I – DECLARATORY JUDGMENT (28 U.S.C. §§ 2201–2202)

22. An actual, justiciable controversy exists between 1515 and STGC concerning STGC's duties under the Policy.

23. 1515 seeks a declaration that STGC owes 1515 a defense (and reimbursement of defense costs) for the Underlying Action to the extent Van Dyke

asserts homestead-based adverse claims affecting title—including the Counterclaim's request that the deed be declared void ab initio and that title be vested solely in Van Dyke—and that STGC must pay covered loss and damages under the Policy. **(See First Amended Answer and Counterclaim ¶ 31.)**

## COUNT II – BREACH OF CONTRACT

24. 1515 and STGC entered into the Policy, a valid and enforceable contract.

25. 1515 performed all conditions precedent and complied with all policy conditions required of it, including timely notice and tender of defense.

26. STGC breached the Policy by failing and refusing to provide a defense to the Underlying Action (including the Counterclaim's title-voiding claim and prayer for relief) and by denying coverage for a potentially covered adverse title claim and cloud on title.

27. As a direct and proximate result of STGC's breach, 1515 has suffered damages, including but not limited to defense costs, attorney's fees (where recoverable), and covered losses as measured by the Policy and Texas law.

## COUNT III – VIOLATIONS OF TEXAS INSURANCE CODE CHAPTER 541

28. 1515 realleges the foregoing.

29. STGC engaged in unfair or deceptive acts or practices in the business of insurance, including violations of Texas Insurance Code § 541.060, by, among other things: (a) misrepresenting material facts or policy provisions relating to coverage;

(b) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement when liability had become reasonably clear; (c) failing to provide a reasonable explanation of the basis for denial in relation to the facts and applicable law; and (d) refusing to pay a claim without conducting a reasonable investigation.

30. STGC's statutory violations were a producing cause of actual damages to 1515, including loss of policy benefits and defense costs. 1515 seeks all relief available under Texas Insurance Code Chapter 541, including actual damages, additional damages for knowing violations, court costs, and reasonable and necessary attorney's fees.

## COUNT IV – VIOLATIONS OF TEXAS INSURANCE CODE CHAPTER 542 (PROMPT PAYMENT OF CLAIMS)

31. 1515 realleges the foregoing.

32. 1515 submitted a first-party claim for policy benefits, including the appointment of counsel and payment/reimbursement of defense costs and coverage for losses arising from an adverse title claim and the Counterclaim's request for relief voiding 1515's deed.

33. STGC failed to timely comply with the statutory deadlines and duties imposed by Texas Insurance Code Chapter 542, including the duties to acknowledge, investigate, and accept or reject the claim within the time required by law, and to timely pay amounts due.

34. Because STGC is liable for the claim under the Policy and failed to comply with Chapter 542, STGC is liable for statutory interest and attorney's fees as provided by Texas Insurance Code § 542.060.

## COUNT V – COMMON-LAW BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

35. 1515 realleges the foregoing.

36. Texas law imposes on insurers a duty to deal fairly and in good faith with their insureds in the processing and payment of claims.

37. STGC breached its duty of good faith and fair dealing by denying a claim when it knew or should have known that coverage and/or a defense was at least reasonably clear, by failing to conduct a reasonable investigation, and by placing its own interests above those of its insured.

38. STGC's bad faith was a proximate cause of damages to 1515, including defense costs, loss of policy benefits, consequential damages, and, where applicable, exemplary damages.

## COUNT VI – NEGLIGENCE

39.  CTOT breached its duty of reasonable care to Plaintiff in one or more of the following ways (each of which is alleged in the alternative and/or cumulatively):

a.  Failing to identify the recorded Homestead Designation Affidavit (RP-2023-106000) in the public records prior to closing and/or prior to issuance of the owner's policy;

b. Failing to perform a reasonable bring-down/update of title through the closing/policy date sufficient to capture recorded instruments affecting the insured's risk, title, or marketability (including the Homestead Designation Affidavit);

c. Failing to disclose the existence and content of the Homestead Designation Affidavit to Plaintiff prior to closing/policy issuance, so that Plaintiff could evaluate whether to proceed with the transaction, restructure it, obtain curative measures, or decline to close;

d. Failing to list and/or appropriately address the Homestead Designation Affidavit in the title commitment/policy exceptions (or otherwise ensure it was properly surfaced and handled as a title/marketability risk);

e. Failing to exercise reasonable care in closing/escrow services by proceeding with closing and issuance of an owner's policy without ensuring Plaintiff had notice of recorded instruments that foreseeably increased the risk of a homestead-based statutory and title-divesting attack; and/or

f. Such other acts or omissions revealed in discovery showing CTOT did not conform its title examination and closing/escrow performance to the applicable standard of care.

40. CTOT's negligence was a proximate cause of Plaintiff's damages. But for CTOT's failure to identify and disclose the recorded Homestead Designation Affidavit and related homestead/title risks, Plaintiff would not have proceeded with

the transaction as structured, would have required curative protections, and/or would have taken other steps to avoid or substantially mitigate the title-divesting attack now asserted.

41. As a direct and foreseeable result of CTOT's negligence, Plaintiff has incurred and continues to incur actual damages, including (without limitation): (a) attorneys' fees and litigation costs defending against Van Dyke's title-voiding claims and related claims; (b) expenses necessary to investigate, respond to, and attempt to cure the cloud on title; (c) loss of use, loss of marketability, impairment of alienability, diminution in value, and/or the risk of loss of the Property if Van Dyke obtains the declaratory relief he seeks; and (d) other consequential damages to be proven at trial.

42. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

43. CTOT owed Plaintiff a duty to use ordinary care in performing its title examination, commitment/policy preparation, and closing/escrow services in connection with Plaintiff's acquisition of the Property.

44. CTOT breached that duty in the manner alleged above.

45. CTOT's breach was a proximate cause of Plaintiff's damages.

## LIMITATIONS / TOLLING

46.     Plaintiff     pleads     the     discovery     rule     and/or     fraudulent concealment/equitable tolling to the extent applicable. CTOT's failure to identify and disclose the recorded Homestead Designation Affidavit and related risk was inherently undiscoverable by Plaintiff at the time of closing and was objectively verifiable from the public records. Plaintiff did not discover, and in the exercise of reasonable diligence could not have discovered, CTOT's omissions until Van Dyke advanced     his     homestead-based     statutory/title-divesting     theory     and recorded-affidavit narrative in litigation and related pleadings.

## VIII.  ATTORNEYS' FEES AND INTEREST

47. 1515 seeks recovery of reasonable and necessary attorney's fees, expenses, and costs as allowed by statute and/or contract, including but not limited to Texas Insurance Code §§ 541.152 and 542.060, the Texas Declaratory Judgments Act (to the extent applicable), and other applicable law.

48. 1515 also seeks pre- and post-judgment interest at the maximum lawful rates.

## IX.   JURY DEMAND

49. 1515 demands a trial by jury on all issues so triable.

## X.    PRAYER

50.  WHEREFORE, Plaintiff 1515 South Holdings, LLC respectfully requests that Defendants Stewart Title Guaranty Company and Capital Title of Texas be cited to appear and answer, and that Plaintiff be awarded judgment as follows:

- A declaration that STGC owes 1515 a defense and coverage under the Policy for homestead-based adverse claims affecting title, including Van Dyke's live request to declare 1515's deed void and vest title solely in Van Dyke, and an order requiring STGC to defend and/or reimburse 1515's reasonable defense costs;

- Actual damages, including but not limited to unpaid policy benefits, defense costs, and other losses covered by the Policy;

- Statutory damages and additional damages under Texas Insurance Code Chapter 541;

- Statutory interest and attorney's fees under Texas Insurance Code Chapter 542;

- Actual, consequential and other damages recoverable under Texas law;

- Reasonable and necessary attorney's fees, costs, and expenses;

- Pre-judgment and post-judgment interest as allowed by law; and

- All other relief, at law or in equity, to which Plaintiff is justly entitled.

Respectfully submitted,

**THE KRAUS LAW FIRM**

_____

JASON D. KRAUS

Texas Bar No. 24058234

19500 State Highway 249

Suite 350

Houston, Texas 77070

Main: 281-781-8677

Fax:   281-840-5611

Email: jdk@krausattorneys.com

Attorney for Plaintiff



# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **1515 SOUTH HOLDINGS, LLC** | § | |
| | § | |
| | § | |
| **VS.** | § | **C.A. NO. 4:24-cv-05038** |
| | § | |
| | § | |
| | § | |
| **SCOTT VAN DYKE** | § | |

## DEFENDANT'S FIRST AMENDED ANSWER AND COUNTERCLAIM

Defendant, SCOTT VAN DYKE, files his First Amended Answer and Counterclaim as follows:

## ANSWER

Pursuant to Rule 8(b) of the Federal Rules of Civil Procedure, Defendant denies each allegation contained within Plaintiff's Original Complaint for Declaratory Judgment except those expressly admitted herein.  Defendant responds to the specific allegations in each of the paragraphs of the Complaint as follows:

### Parties

1.      Defendant admits the allegation in paragraph 1 that it currently owns the property located at 1515 South Blvd., Houston, Texas 77006 ("Property").  Defendant lacks sufficient knowledge or information to form a belief as to whether Plaintiff is a Delaware limited liability company or as to whether no member of Plaintiff is a domiciliary or resident of Texas.

2.      Defendant admits the allegations in paragraph 2.

## Jurisdiction and Venue

3.      Defendant lacks sufficient knowledge or information to form a belief as to whether Plaintiff and Defendant are citizens of different states, but admits that the amount in controversy exceeds $75,000.00.

4.      Defendant admits the allegations in paragraph 4.

5.      Defendant admits that allegations in paragraph 5.

6.      Defendant admits the allegations in paragraph 6.

## Facts

7.      Defendant admits the allegations in paragraph 7.

8.      Defendant admits the allegations in paragraph 8.

9.      Defendant denies the allegation in paragraph 9 that the purchase contract is attached as Exhibit 1.

10.     Defendant admits the allegations in paragraph 10.

11.     Defendant admits the allegations in paragraph11.

12.     Defendant denies the allegations in paragraph 12 that there were countless promises that closing was imminent, but admits that the purchase of the property has not closed as of the date of the filing of this Answer.

13.     Paragraph 13 contains legal conclusions to which no response is required.

14.     Paragraph 14 contains legal conclusions to which no response is required. Additionally, to the extent a response is required, Defendant denies the allegations in paragraph 14.

15.     As to paragraph 15, Defendant lacks sufficient knowledge or information to form a belief as to Plaintiff's position and opinion, but denies that all contingencies were satisfied.

16.     Defendant denies the allegation in paragraph 16 that all conditions were satisfied but admits that an e-mail was sent on August 5, 2024.

17.     Paragraph 17 contains legal conclusions to which no response is required. Additionally, to the extent a response is required, Defendant denies the allegations in paragraph 17.

18.     Paragraph 18 contains legal conclusions to which no response is required. Additionally, to the extent a response is required, Defendant denies the allegations in paragraph 18.

19.     Paragraph 19 contains legal conclusions to which no response is required. Additionally, to the extent a response is required, Defendant denies the allegations in paragraph 19.

20.     Paragraph 20 contains legal conclusions to which no response is required. Additionally, to the extent a response is required, Defendant denies the allegations in paragraph 20.

21.     Paragraph 21 contains legal conclusions to which no response is required. Additionally, to the extent a response is required, Defendant denies the allegations in paragraph 21.

22.     There is no paragraph 22.

### Causes of Action

23.     Paragraph 23 sets forth legal conclusions and questions of law to be determined solely by the Court, to which no response is required.

24.     Paragraph 24 sets forth legal conclusions and questions of law to be determined solely by the Court, to which no response is required.

25.     Paragraph 25 sets forth legal conclusions and questions of law to be determined solely by the Court, to which no response is required.

26.     Paragraph 26 constitutes Plaintiff's request for relief to which no responsive pleading is necessary.  To the extent a responsive pleading is required, Defendant denies that Plaintiff is entitled to the relief sought.

27.      Paragraph 27 constitutes Plaintiff's request for relief to which no responsive pleading is necessary.  To the extent a responsive pleading is required, Defendant denies that Plaintiff is entitled to the relief sought.

All allegations that have not been specifically admitted are hereby denied.

## **Prayer**

The remainder of the Complaint constitutes Plaintiff's request for relief to which no responsive pleading is necessary. To the extent a responsive pleading is required, Defendant denies that Plaintiff is entitled to the relief sought.

* * * * *

### **First Affirmative Defense**

Defendant asserts with respect to the contract which is the subject matter of this dispute, not all contingencies and conditions were satisfied.

### **Second Affirmative Defense**

Defendant asserts that because all contract contingencies and conditions were not satisfied by Plaintiff, the purported termination of the option is null and void ab initio.

### **Third Affirmative Defense**

Defendant asserts that the contract which is the subject matter of this dispute constitutes an "executory contract" which is governed by Chapter 5 of the Texas Property Code, and because it is governed by Chapter 5, Plaintiff has failed to comply with all requirement with regard to disclosures, recordation, delivery of an annual accounting statement, and other statutory requirements.

### **Fourth Affirmative Defense**

Defendant asserts that the sale of the Property by Defendant to Plaintiff violates section 41.006 of the Texas Property Code in that the Property was the homestead of

Defendant at the time of the sale, was for less than the appraised fair market value of the Property at the time of the sale, and in connection with such sale, Defendant executed a lease with Plaintiff at lease payments that exceed the fair rental value of the Property.

## COUNTERCLAIM

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendant and now Counter-Plaintiff, SCOTT V. VAN DYKE, complains of Plaintiff and now Counter-Defendant, 1515 SOUTH HOLDINGS, LLC, as follows:

## Factual Background

1.    Scott V. Van Dyke ("Mr. Van Dyke") was previously the owner of 1515 South Boulevard, Houston, Harris County, Texas 77006 (the "Property"), his residence, having purchased the Property in 2005.

2.    Mr. Van Dyke has owned and managed successful oil and gas exploration companies since 1990. Before COVID-19, his company was one of the top oil and gas producers in south Louisiana. By 2020, there were approximately 400 oil companies operating in south Louisiana, and his company was producing more oil and gas than 93% of the other oil companies. When COVID-19 occurred, governments throughout the U.S. forced lock-downs, issued stay-at home orders, and put curfews into place all in an effort to restrict the spread of the pandemic. These Covid restrictions forced about fifty percent (50%) of the oil companies operating in Louisiana to file for bankruptcy protection.  Mr. Van Dyke's company was one of those companies.

3.      Due to the resulting difficulties in the oil and gas industry, and the fact that Mr. Van Dyke had personally guaranteed corporate debt obligations, Mr. Van Dyke was forced to file personal bankruptcy in May 2021.  On December 6, 2022, his personal bankruptcy was fully discharged.

4.      As part of restructuring his financial affairs, Mr. Van Dyke sought traditional bank financing, but was unable to qualify.  He then was introduced to Fairview Partners, a debt fund manager with a focus on the purchase and origination of senior secured real estate loans, to assist with his financial needs at the time.

5.      On February 6, 2023, Braden M. Hillman, an appraiser licensed by the Texas Appraisal Licensing and Certification Board, of Brubaker and Associates, performed an appraisal of the Property in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice (USPAP) that were adopted and promulgated by the Appraisal Standard Board of The Appraisal Institute. The appraised value of the Property, per Mr. Hillman, was $5,750,000.00.

6.      On February 8, 2023, Mr. Van Dyke filed a "Non-Homestead Affidavit" in the Harris County Real Property Records under Clerk's File No. RP-2023-41951, wherein he disclaimed any homestead interest in the Property.  The Non-Homestead Affidavit stated that it was "made to Fairview Investment Fund 6, LP ("Lender') to make a loan to me pledging the non-homestead property first described above.".

7.      Because Fairview Investment Fund 6, LP (an affiliate of Fairview Partners) did not make a loan to Mr. Van Duke, which was the stated reason for the filing of the Non-Homestead Affidavit, on March 27, 2023, Mr. Van Dyke filed a "Homestead Designation Affidavit" in the Harris County Real Property Records under Clerk's File No. RP-2023-106000 wherein he fully rescinded "ab initio any prior affidavits by me or acts whereby I renounced or disclaimed any homestead and/or community property right" in the Property. The Homestead Designation Affidavit also recited that the Property was his homestead.

8.      On March 28, 2023, Mr. Van Dyke received a bona fide third party written offer to purchase the Property for $5,300,000.00.

9.      On March 30, 2023, Mr. Van Dyke, as Seller, and 1515 South Holdings LLC (as successor-in-interest to Fairview Investment Fund VI LP) ("1515 LLC"), as Buyer, entered into a TREC One to Four Family Residential Contract (Resale) ("Contract") for the sale of the Property. The Sales Price was $3,250,000.00. The Contract provided that Mr. Van Dyke has the option to re-purchase the Property pursuant to the terms and conditions of the Van Dyke Residential Contract Addendum.  At the time of the sale of the Property, the Property was the homestead of Mr. Van Dyke.

10.     The Contract Addendum provided that upon closing on the sale of the Property to 1515 LLC, 1515 LLC would "leaseback" the Property to Mr. Van Dyke for 12 months (and month to month thereafter) pursuant to a post-closing lease.  The Contract Addendum also contained an option for Mr. Van Dyke to purchase back the Property.

-8-

11.     The Contract was amended several times and 1515 LLC, as Landlord, and Mr. Van Dyke, as Tenant, and as part of the Contract 1515 LLC and Mr. Van Dyke entered into a Texas Realtors Residential Lease ("Lease"). The monthly rent under the Lease was $30,000.00.

12.     $30,000.00 a month in rent was in excess of the fair rental value of the Property.  Nathan Hill, a Certified Residential Real Estate Appraiser (License Number TX 1361152R) with Everett Valuation, who also prepared an appraisal of the Property pursuant to USPAP standards, has estimated that the fair monthly rental value of the Property as of March 30, 2023, the date of the the Lease, was $16,000.00.

13.     Schedule 1 of the Contract contained paragraph 25, which was the "Option to Purchase."  The purchase price for the Property under Schedule 1 was $3,900,000.00, plus any fees, costs and expenses relating to the purchase of the Property by 1515 LLC in excess of $3,250,000, less the total amount of any rent Mr. Van Dyke paid to 1515 LLC pursuant to the Lease. Closing was to occur on the 15th day following the satisfaction of all contingencies and conditions set forth in paragraph 25.  Closing was to occur at a title company and the transfer of the Property "shall be closed through a 'New York Style' deed and money escrow" with the title company.  "New York Style deed and money escrow" is not defined in paragraph 25 of Schedule 1.  Pursuant to 25(f) of the Schedule, Landlord was required to deliver to the title company documents that were "mutually and reasonably satisfactory to Landlord and Tenant."  Similarly, 25(g) of the Schedule provided that Mr. Van

-9-

Dyke, as Tenant, was required to deliver documents which were "mutually and reasonably satisfactory to Landlord and Tenant."

14.     On May 16, 2023, by General Warranty Deed ("Deed"), Mr. Van Dyke, as Grantor, conveyed the Property to 1515 LLC. The Deed was recorded in the Harris County Real Property Records under Clerk's File No. RP-2023-182567.

15.     Mr. Hill's appraised the Property as of May 16, 2023, the date of the sale to 1515 LLC, as having a fair market value of $5,600,000.00.

16.     Mr. Van Dyke remained in possession of the Property pursuant to the Lease. Between April 28, 2023 and May 19, 2024, Mr. Van Dyke paid 1515, LLC $360,000.00 in rent.

17.     On May 20, 2024, 1515 LLC purportedly attempted to terminate Mr. Van Dyke's right to possession of the Property.

18.     On June 3, Mr. Van Dyke paid $30,000.00 rent to 1515 LC for June rent. The $30,000.00 June 2024 rent was accepted by 1515 LLC.

19.     On June 17, Mr. Van Dyke notified 1515 LLC that he was exercising his option under the Contract to purchase the Property. Because he was exercising his option, Mr. Van Dyke notified 1515 LLC that the May 20, 2024 notice was "moot, null and void for all purposes" because Section 25.1(c) of the Addendum stated that:

> If the closing date falls after the termination or expiration of the Lease term, the Lease term shall be automatically extended on the same terms and conditions until closing.

The Option to Purchase also provides that "closing shall occur on the fifteenth (15th) day following the satisfaction of the contingencies and conditions set forth in this Section."

20.     On July 1,  Mr. Van Dyke tendered the July 2024 $30,000.00 rent to 1515, LLC, which was accepted by 1515 LLC.

21.     On August 1, Mr. Van Dyke tendered the August 2024 $30,000.00 rent to 1515, LLC, which was accepted by 1515 LLC.

22.     On or about September 3, Mr. Van Dyke tendered the September 2024 $30,000.00 rent to 1515, LLC, which for the first time, was not accepted.

23.     On September 3, 1515 LLC filed its Sworn Petition for Eviction in the Justice Court, despite having received and accepted $90,000.00 in rent between the date of the purported Notice of Lease Termination (May 20) and the filing of the Eviction lawsuit.  In the Justice Court, 1515 LLC confessed judgment in favor of Mr. Van Dyke.

24.     On December 13, 2024, following the trial of the appeal of the eviction proceeding, the court in Cause No. 1236920; *1515 South Holdings, LLC vs. Scott Van Dyke and all Occupants of 1515 South Blvd., Houston, Texas 77006*; In the County Civil Court at Law Number Two (2) of Harris County, Texas ("Eviction Lawsuit"), ruled in favor of Mr. Van Dyke holding that he was entitled to remain in possession of the Property, and also awarding him over $16,000.00 in legal fees.

25.     Three days after his victory in the Eviction Lawsuit, on December 16, 1515 LLC wrongfully terminated Mr. Van Dyke's option under the Contract, falsely claiming that all contingencies were satisfied by both parties.

## Causes of Action

26.     Mr. Van Dyke incorporates the factual allegations contained hereinabove.

### *Violation of Section 41.006 of the Texas Property Code and Texas Deceptive Trade Practices Act*

27.     Section 41.006 of the Texas Property Code ("Code") provides that any sale in whole or in part of a homestead at a fixed purchase price that is less than the appraised fair market value of the property at the time of the sale, and in connection with which the buyer of the property executes a lease of the property to the seller at lease payments that exceed the fair rental value of the property is considered to be a loan with all payments made from the seller to the buyer in excess of the sales price considered to be interest subject to Title 4 of the Texas Finance Code.  TEX. PROP. CODE §41.006(a).

28.     The Code further provides that the taking of any deed in connection with a transaction describe in Chapter 41 "is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code", and "the deed is void and no lien attaches to the homestead property as a result of the purported sale." TEX. PROP. CODE §41.006(b).

29.     Chapter 41 of the Code is a "tie in" statute under the Deceptive Trade Practices Act ("DTPA"), and as such, 1515 LLC's actions are classified as a "false misleading or deceptive acts or practices." The deceptive acts were relied on by Mr. Van Dyke to his detriment, and were the producing cause of economic injuries, for which he seeks recovery herein.

-12-

30.     Given that the Homestead Designation Affidavit was duly filed of record at the time of the sale of the Property, the Sales Price under the Contract was less than the appraised value of the Property, and because the Lease rental rate and payments exceeded the fair rental value of the Property, 1515 LLC committed a knowing and intentional violation of the DTPA.  As such, Mr. Van Dyke is entitled to recover additional economic damages of up to three (3) times the amount of economic damages for a DTPA claim, for which he seeks recovery herein. Mr. Van Dyke is also entitled to his reasonable and necessary attorney fees, for which he also seeks recovery, along with court costs.  TEX. BUS. & COM. CODE § 17.50(c)(d).

31.     Pursuant to the Code, Mr. Van Dyke is also entitled to a declaration from this Court that the Deed is *void ab initio,* that no lien attaches to the Property as a result of any action of 1515 LLC, and that title to the Property is solely vested in Mr. Van Dyke, free from all claims, liens, or encumbrances asserted by 1515 LLC.

### Federal Declaratory Judgment Act

32.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, the Court may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought, and any such declaration shall have the force and effect of a final judgment or decree.

33.     Mr. Van Dyke seeks a declaration as to whether all contingencies and conditions were satisfied or unsatisfied pursuant to Schedule 1 of the Contract, given that Mr. Van Dyke has a justiciable interest in the Property.   In the event such contingencies were not

satisfied by 1515 LLC, Mr. Van Dyke is entitled to a determination that the Option is in full force and effect, and that the purported termination of the option is null and *void ab initio*. Moreover, the term "New York Style deed and money escrow" is an undefined and vague term in Schedule 1 of the Contract, and the court should declare that that term must be fully understood prior to any right of 1515 LLC to terminate the Option.

34.     Mr. Van Dyke also seeks a judicial declaration as to whether the Contract constitutes an "executory contract" which is governed by Chapter 5 of the Texas Property Code.  An executory contract, or a "contract for deed," is a real-estate transaction that allows the seller of the property to retain title until the purchaser has paid for the property in full. A contract for deed "serves to provide persons unable to obtain conventional mortgage financing an alternative means of purchasing real property." *Shook v. Walden*, 368 S.W.3d 604, 625 (Tex. App.—Austin 2012, pet. denied).  If so, the Court shall declare that 1515 LLC has failed to comply with the requirements of the Code with respect to disclosures, recordation, delivery of an annual accounting statement, and other statutory requirements.

## **Condition Precedent**

35.     All conditions precedent necessary to maintain this action have been performed, have been waived, or have occurred.

-14-

## **Relief Requested**

WHEREFORE, Defendant and Counter-Plaintiff, SCOTT V. VAN DYKE, prays that upon final trial, SCOTT V. VAN DYKE, the affirmative claims against him by 1515 SOUTH HOLDINGS, LLC be in all things dismissed, and that he be awarded judgment against Plaintiff and Counter-Defendant, 1515 SOUTH HOLDINGS, LLC, for the following:

(a)     Actual and statutory damages, including treble damages under the DTPA;

(b)     Declaratory relief as stated herein;

(c)     Reasonable and necessary attorneys' fees;

(d)     Interest at the highest rate allowed by law;

(e)     Costs of suit; and

(f)     Such other and further relief to which SCOTT V. VAN DYKE may show himself justly entitled.

Respectfully submitted,


/s/ Sanford L. Dow
    Sanford L. Dow
    Texas Bar No. 00787392
    S.D. Tex. ID No. 17162
    2700 Post Oak. Blvd., Suite 1750
    Houston, Texas 77056
    (713) 526-3700/FAX (713) 526-3750
    dow@dowgolub.com

ATTORNEY-IN-CHARGE FOR SCOTT VAN DYKE

OF COUNSEL:

DOW GOLUB REMELS & GILBREATH, PLLC
2700 Post Oak Blvd., Suite 1750
Houston, Texas 77056
(713) 526-3700/FAX (713) 526-3750

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certified that the foregoing has been served upon all parties pursuant to Federal Rule of Civil Procedure 5(b) and the United States District Court for the Southern District of Texas Local Rule 5.3 via the ECF system on February 24, 2026.

/s/ Sanford L. Dow
Sanford L. Dow



**Jordan Haas**
**Claims Counsel**
**Stewart Title Guaranty Company**
**Jordan.Haas@stewart.com**

February 26, 2026

Jason D. Kraus                                                   *Sent Via E-Mail*
The Kraus Law Firm
jdk@krausattorneys.com

Re:    **STGC File No.:**         S023-0350892-25
       **Insured:**               1515 South Holdings, LLC
       **Property Address:**      1515 South Boulevard, Houston, TX 77006
       **Policy Number:**         O-5966-000294417

Dear Mr. Kraus:

This letter further responds to the title claim submitted to Stewart Title Guaranty Company ("STGC") by you on behalf of 1515 South Holdings, LLC, the Insured, and specifically responds to your request for reconsideration of the denial of your client's title claim submitted on January 27, 2026. STGC's previous correspondence dated June 5, 2025 is hereby incorporated herein by reference.

You previously submitted a claim to STGC in connection with the court case of Scott V. Van Dyke v. 1515 South Holdings, LLC, District Court of Harris County, Texas, Case No. 2024-88245 (the "Lawsuit"). STGC responded to your initial claim on June 5, 2025, specifically, denying the claim as: (1) the Contract with the option to repurchase and the Lease Agreement are excepted from coverage under Schedule B Exceptions 6(c) and 6(d) as rights of parties in possession and rights of tenants, as tenants only, under unrecorded leases or rental agreements, respectively; (2) the agreements between the Insured and the Plaintiff in the Lawsuit are excluded from coverage as an adverse claim created by the Insured (3(a)) and as an adverse claim not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed to STGC prior to the time the Claimant became an Insured under the Policy (3(b)); and (3) to the extent any of the foregoing related to the Contract occurred after the Date of Policy, no coverage is afforded under the Policy as Exclusion 3(d) excludes from coverage adverse claims occurring after the Date of Policy.

On January 27, 2026, you submitted a request for reconsideration. Specifically, your reconsideration requests review of "a recorded Homestead Affidavit (and the resulting homestead-based statutory attack) that was omitted from the title commitment and policy exceptions, and that materially affects 1515's ability to maintain and convey marketable title." Specifically, you allege that the Policy failed to disclose the Homestead Affidavit, and that had your client known of its existence, it would not have agreed to the transaction. You seek reimbursement of litigation fees and costs, as well as defense for the remaining claims in the litigation.

The title insurance policy is a contract of indemnity against actual loss incurred or sustained by reason of one or more covered risks. Coverage under the Owner's Policy of Title Insurance (T-1) issued with an effective Date of Policy of May 18, 2023 in the Amount of $3,250,000.00, is both limited by and subject to the terms of the policy, including the Exclusions from Coverage, Conditions, and Schedule B Exceptions contained in the Policy. Please note that when determining an obligation to defend an Insured

in litigation, STGC does not consider the merits of the pleadings, nor does it make any representation as to the truth or falsity of such; however, to the extent that the allegations are proven true, STGC evaluates whether such would result in coverage and indemnification under the Policy. The allegations, assuming the same are proven true, must trigger one or more of the Covered Risks and not otherwise be excluded or excepted from coverage.

At the time of the June 2025 Coverage Determination, STGC reviewed the original Complaint and Lawsuit filed against the Insured. In your current request, you provided some copies of updated pleadings, including an Order denying Motion for Summary Judgment filed by the Insured and an order referring the case to mediation. You subsequently advised that the matter did not settle at mediation. Your request for reconsideration rests primarily on the idea that the Homestead Designation Affidavit, recorded on March 27, 2023 (the "Homestead Affidavit") was not disclosed or contained in the Policy as an exception despite the fact that you claim its existence impairs and/or clouds title and/or renders the deed void. You further claim that had your client known of this Affidavit, it would not have purchased the property. Respectfully, the existence of the Homestead Affidavit does not impact the title (i.e., it does not alter ownership of the property, nor does its existence alone divest your client of its interest) but serves instead to provide information regarding the equity and/or occupation of the home. Respectfully, STGC has no obligation to disclose all recorded instruments in the Policy; it is not an abstract of title, and not all documents will implicate title. More importantly, here the Plaintiff does not allege that he is the owner of the property by virtue of the Homestead Affidavit. Rather, the Plaintiff alleges that the Insured violated the Texas DPTA Section 41.006 because it paid less than the fair market appraised value of the property in its purchase and leased the premises back to the Plaintiff, and that in connection with so doing, such actions were false and misleading to the Plaintiff. The allegations asserted by Plaintiff do not trigger any of the Covered Risks of the Policy and are further subject to the previously cited Exclusions and Exceptions.

As the Homestead Affidavit falls outside the Covered Risks of the Policy (and is further subject to the Exceptions and Exclusions from Coverage), STGC respectfully, again, denies the tender of defense of the Insured in the lawsuit.

Finally, to the extent your request for reconsideration alleges wrongdoing by Capital Title of Texas, LLC, please note that pursuant to Condition 15, the Policy is the entire contract between STGC and the Insured. It does not address any external claims that the Insured may have against any third parties. This response is on behalf of STGC only, as STGC as the Underwriter of the Policy did not conduct any title search or participate in the closing transaction.

As this letter is a denial of your client's claim, the Texas Department of Insurance requires us to advise you as follows:

**You are hereby notified that you have the right to contest the Denial of this claim by instituting litigation or arbitration (pursuant to policy provisions) if you desire. There are deadlines or limitations that require such litigation to be commenced within 2 or 4 years from your receipt of this notice, depending upon the cause of action that you assert. In the event an action is not commenced within these time deadlines, your right to contest the action of the company may be lost. You should consult your attorney for more specific advice and information in this regard.**

STGC's response to the policy claim on the grounds expressed herein is without prejudice to any other rights and defenses that STGC may have, and all such rights and defenses are hereby reserved. Although the reasons stated above are sufficient to deny the claim, they are not intended to be exclusive. If you believe that there are facts, legal theories, case law, or any other pertinent information that you would like us to consider and which you believe may result in a different coverage determination, please send this

information to my attention.  Any new information will be carefully reviewed to determine whether this coverage opinion should be changed. STGC reserves the right to establish additional grounds for denial should a further review of the file become necessary and STGC reserves the right to amend or supplement this denial.


Thank you,


Jordan Haas
Claims Counsel